THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

ACHIM STRUPAT                )      Case No.  2:11CV00279-DS

        Plaintiff,    )

     vs.            )
                         MEMORANDUM DECISION
                          AND ORDER GRANTING
                  DEFENDANT'S MOTION TO DISMISS

AURORA LOAN SERVICES LLC,   )

        Defendant.    )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I.  INTRODUCTION

The following facts are gleamed from Plaintiff's Verified Complaint.  Plaintiff owns a parcel of real property located at 334 N. Dover Lane, Washington, Utah (the "Property").  On September 14, 2005, Plaintiff obtained a loan from First Magnus Financial Corporation ("First Magnus") in the principal amount of $127,900.00, which was secured by a recorded Deed of Trust on the Property.  Plaintiff made loan payments to First Magnus and then to Aurora Loan Services LLC ("Aurora") after the loan was transferred.

Plaintiff began missing payments due under the loan and contacted Aurora in July of 2009, to obtain a loan modification in order to lower his monthly loan payment.  On March 3, 2010, Plaintiff began making payments under a six-month forbearance

agreement with Aurora. He continued to pursue a loan modification.

On October 5, 2010, Aurora informed Plaintiff that his loan modification application had been denied on September 29, 2010, because Plaintiff's June payment under the forbearance agreement did not conform to the terms of that agreement. Subsequently, Aurora told Plaintiff that his loan modification application had been denied because he failed to timely provide documents requested by Aurora.

Aurora agreed to reconsider Plaintiff's loan modification application and Plaintiff submitted loan modification documents including a hardship letter, tax returns, bank statements, rental agreements, and profit loss statements from Plaintiff's various business ventures. In November, 2010, Plaintiff was informed that his loan modification application had been sent to Aurora's Underwriting Department for review. On or about December 2, 2010, he learned that Underwriting denied his loan modification application for failure to verify income, and that a trustee sale had been set for December 16, 2010.

Plaintiff alleges that after his loan modification application was denied, he was told by Aurora that it did not use the profit and loss statements, copies of rental agreements and bank statements to calculate Plaintiff's current income, but

instead used plaintiff's 2009 tax returns.

Plaintiff alleges that after his attempts to communicate with Aurora's Underwriting Department went unanswered, he complained to, and spoke with, a representative from Aurora's Executive Complaint Group, who ensured a postponement of the pending December foreclosure sale, and that Underwriting would ascertain Plaintiff's income by analyzing his profit loss statements, rental agreements, bank statements, etc.

Plaintiff alleges that on December 13, 2010, he was told by Underwriting that "he would be entitled to receive a loan modification pending final verification of the total outstanding balance of the Loan, which should occur in less than two business days. [And] ... Aurora would either approve the loan modification within two-business day [sic], or ... contact [Plaintiff] to explain why the loan modification would be denied." Compl. at ¶ 42.

Plaintiff states that he unsuccessfully attempted to contact Underwriting throughout December 2010, and January 2011. He alleges that he was informed at the end of January 2011, that his loan modification had been denied again because the owner of the note had changed the criteria for obtaining the loan modification.

In response, Plaintiff filed the present complaint purporting to state claims for the following: Count I -

Violations of Truth in Lending Act; Count II - Violations of the
Federal Debt Collections Practices Act [read Fair Debt Collection
Practices Act]; Count III - Breach of Contract; Count IV - Breach
of Implied Covenant of Good Faith and Fair Dealing; Count V -
Promissory Estoppel; Count VI - Quiet Title; and, Count VII -
Wrongful Foreclosure.

Defendant has filed a Motion to Dismiss (Doc.# 7) seeking
dismissal of each claim.  For the reasons that follow, Defendant
is entitled to the relief it seeks.

## II.  STANDARD OF REVIEW

In reviewing the Complaint the Court accepts as true all
well pleaded allegations of the complaint and views them in the
light most favorable to the non-moving party.  *Anderson v. Blake*,
469 F.3d 910, 913 (10th Cir. 2006).  Legal conclusions,
deductions, and opinions couched as facts are, however, not given
such a presumption.  *Mitchell v. King*, 537 F.2d 385 (10th Cir.
1976); *Swanson v. Bixler*, 750 F.2d 810 (10th Cir. 1984).  The
complaint must plead sufficient facts, that when taken as true,
provide "plausible grounds" that "discovery will reveal evidence"
to support plaintiff's allegations.  *Bell Atlantic Corp. V.
Twombly*, 127 S. Ct. 1955, 1965 (2007).  The burden is on the
plaintiff to frame a "complaint with enough factual matter (taken
as true) to suggest" that he or she is entitled to relief.  *Id.*
"Factual allegations must be enough to raise a right to relief

4

above the speculative level." *Id.* The allegations must be
enough that, if assumed to be true, the plaintiff plausibly (not
just speculatively) has a claim for relief. *Robbins v. Oklahoma*,
519 F.3d 1242, 1247-48 (10th Cir. 2008).

### III. DISCUSSION

#### A. Count I - Truth in Lending Act Claim

Plaintiff agrees to the dismissal of Count I.

#### B. Count II - Fair Debt Collection Practices Act

Plaintiff agrees to the dismissal of Count II.

#### C. Count III - Breach of Contract

Plaintiff alleges that Aurora "as the alleged creditors
[sic] and servicers [sic] of the Loan entered into and assumed a
contract with [him]." Compl. at ¶ 55. And "as part of that
contract Defendants were required to properly consider [his]
application for a loan modification." Id. at ¶ 56. He further
alleges that Aurora breached that purported contract by stalling
its consideration of his application and fabricating reasons to
arbitrarily deny his application.

As discussed in Section D herein, "[a]n implied covenant of
good faith and fair dealing inheres in every contract .... [and]
both parties ... impliedly promise not to intentionally do
anything to injure the other party's right to receive the
benefits of the contract." *Eggett v. Wasatch Energy Corp.*, 94
P.3d 193, 197 (Utah 2004)(citations omitted). With regard to a

claim for breach of contract, however, the facts alleged do not support the existence, or the creation, of any contract between Plaintiff and Aurora relative to consideration of Plaintiff's application for a loan modification.

"It is fundamental that a meeting of the minds on the integral features of an agreement is essential to the formation of a contract.  Thus, a binding contract exists where it can be shown that the parties had a meeting of the minds as to the integral features of [the] agreement and that the terms are sufficiently definite as to be capable of being enforced." *Estrada v. Aurora Loan Services, LLC, No. 2:10cv01009-TS,* 2010 WL 4869093, at *3 (D. Utah Nov. 23, 2010)(citation omitted).

The Complaint fails to allege terms of any agreement regarding Plaintiff's application for a loan modification sufficiently definite as to be enforceable.  There are no allegations that reflect a meeting of the minds as to the integral features of any purported contract to properly consider Plaintiff's application for a loan modification.  The facts alleged reflect only that Aurora denied Plaintiff's loan modification application because his June payment under the forbearance agreement did not conform to the terms of the forbearance agreement.  And that at Plaintiff's request, Aurora reconsidered its  denial of his application and then again rejected it because of his failure to verify income, and then

again rejected it because the owner of the note had changed the criteria for obtaining a loan modification.

Moreover, the Trust Deed giving Aurora the right of Foreclosure is subject to the statute of frauds. See Utah Code Ann. § 25-5-1. Oral modifications of agreements required to be in writing are unenforceable. *Zion's Prop., Inc., v. Holt*, 538 P.2d 1319, 1322 (Utah 1975)("[i]t is elementary that when a contract is required to be in writing, the same requirement applies with equal force to any alteration or modification thereof" and "any such modifying agreement must be sufficiently certain and unequivocal in its terms that the parties will understand what it is and what is to be done under it"). No allegations reflect that the original loan and trust deed documents were modified in writing relative to a loan modification or that terms of any such modification were sufficiently certain and unequivocal.

### D. Count IV – Breach of Implied Covenant of Good Faith and Fair Dealing

"In Utah, a plaintiff may sue on a contract for: (1)breach of the contract's express terms; and/or (2)breach of the covenant of good faith and fair dealing, which is an implied duty that inheres in every contractual relationship." *Blakely v. USAA Casualty Ins. Co.*, 633 F.3d 944,947 (10th Cir. 2011).

To the extent Plaintiff alleges that Aurora failed to act in good faith relative to the loan and the Deed of Trust, the

Complaint is devoid of supporting factual allegations. As
Defendant notes, "Plaintiff does not say what contract
[provision] required Aurora to 'properly consider' his loan
modification, what would constitute proper consideration or in
what way it did not properly consider his loan, other than to
suggest ... that it should have considered not only the income
stated in his 2009 income taxes, but also income from profit and
loss statements, copies of rental agreements and bank statements
to calculate Plaintiff's income."  Mem. Supp. at 8

To the extent that Plaintiff claims that Aurora acted in bad
faith with respect to a purported new contract in connection with
his loan modification request, the Court has concluded that the
well pleaded allegations of the Complaint fail to support either
the existence, or the creation, of any such contract.  Absent a
contract there can be no breach of any implied duty.

**E.  Count V - Promissory Estoppel**

Plaintiff's allegations regarding promissory estoppel are
insufficient to state a claim.  The essence of Plaintiff's
position appears to be that he reasonably relied on Aurora's
promise to properly consider his application for a loan
modification, which he asserts it didn't do.

Promissory estoppel requires a showing of the following
elements:

(1) the plaintiff acted with prudence and in reasonable
reliance on a promise made by the defendant; (2) the

> defendant knew that the plaintiff had relied on the
> promise which the defendant should reasonably expect to
> induce action or forbearance on the part of the
> plaintiff or a third person; (3) the defendant was
> aware of all material facts; and (4) the plaintiff
> relied on the promise and the reliance resulted in a
> loss to the plaintiff.

*Estrada*, 2010 WL 4869093, *4 (citing *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088, 1092 (Utah 2007)).

As Defendant notes, while Plaintiff recites the foregoing elements, he fails to support them with sufficient factual allegations. The allegations do not support a meeting of the minds, no final terms agreed to and no promise that Plaintiff would receive a loan modification. The Court agrees with Aurora that Plaintiff has not shown how he relied on any such promise or that he suffered a loss. Plaintiff was in default on his loan, and there is no promise alleged that he did not have to make payments. The well pleaded facts alleged reflect simply that Aurora considered and, for various reasons denied, Plaintiff's application for a loan modification.

### F.  Count VI - Quiet Title & Count VII - Wrongful Foreclosure

A party seeking to quiet title "must allege title, entitlement to possession, and that the estate or interest claimed by others is adverse or hostile to the alleged claims of title or interest." *Utah State Dept. of Social Services v. Santiago*, 590 P.2d 335, 337-338(Utah 1979). The "plaintiff must

prevail on the strength of his own claim to title and not on the weakness of a defendant's title or even its total lack of title." *Church v. Meadow Springs Ranch Corp., Inc.,* 659 P.2d 1045, 1048-49 (Utah 1983). To prevail, Plaintiffs must allege, and ultimately prove, that their interest is superior to the Trust Deed.

The Complaint, however, contains insufficient allegations to support this claim and the claim is contradicted by other allegations of the Complaint. Plaintiff does not allege that he holds clear unencumbered title to the subject property, or even that he is not in default under the loan. He admits executing the Deed of Trust and to conveying his interest in the property for the purpose of securing the loan. Compl. ¶ 14. And as Defendant notes, "Plaintiff's allegation that the obligation due under the Loan is not due to Aurora is completely contradicted by his numerous other allegations that the loan was transferred to Aurora, that he made payments to Aurora and that he attempted, unsuccessfully, to complete a loan modification with Aurora." Reply at 8.

Additionally, and to the extent Plaintiff bases his quite title claim on the so called "split the note" theory, courts in this jurisdiction have repeatedly held that the mortgage follows the note and have rejected the "split the note" theory. *See, e.g., Witt v. CIT Group/Consumer Fin. Inc.*, No. 2:10cv440-TS,

2010 WL 4609368, at *4 (D. Utah Nov. 5, 2010)(rejecting "split the note" argument as "squarely at odds with the firmly established presumption that a transfer of the note carries with it the deed of trust, without any formal assignment"); *King v. American Mortg. Network, Inc.*, No. 1:09cv00162-DAK, 2010 WL 3516475, at *3 (D. Utah Sept. 2, 2010)("Plaintiff's claims that [] the Note and Trust Deed have been split ... are simply not plausible claims for relief and must be dismissed"); *Rodeback v. Utah Financial*, No. 1:09cv00134-TC, 2010 WL 2757243, at *3 (D. Utah July 13, 2010)("each successor to the note receives the benefit of the security"); *Marty v. Mortgage Electronic Registration Systems*, No. 1:10cv00033-CW, 2010 WL 4117196, at *6 (D. Utah Oct. 19, 2010)("[n]othing in law or logic supports [plaintiff's argument] that [a lender's] delegation [of nominee authority to MERS] would constitute a separation of the rights under the trust deed from the ownership of the note").

Finally, Plaintiff's suggestion that he should be allowed to amend his Complaint to plead unspecified claims is rejected. Plaintiff offers nothing more than general conclusions devoid of supporting factual allegations as support for his request that he be granted leave to amend. While leave to amend should be freely given when justice requires, a plaintiff seeking to amend a complaint "must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment."

*Calderon v. Kan. Dep't of Social & Rehab. Servs.*, 181 F.3d 1180, 1186-87 (10th cir. 1999). "Without this information the district court is not required to recognize, let alone grant, a motion to amend." *Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009).

### III.  CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss (Doc. # 7) is granted and Plaintiff's Complaint is ordered dismissed with prejudice.

IT IS SO ORDERED.

DATED this 9th day of June, 2011.

BY THE COURT:

_David Sam_

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT